Good afternoon, Your Honors, and may it please the Court. This matter presents important questions regarding subject matter jurisdiction and review under the Administrative Procedure Act. The answers to those questions are of significance to hundreds of thousands of temporary protected status recipients who might otherwise be eligible to become lawful permanent residents but for the arbitrary and capricious actions of the Department of Homeland Security. The government contends that because appellants have all previously been ordered removed, the jurisdiction-stripping provisions of the Immigration and Nationality Act prevent them from litigating the merits of their claims in district court. This would be true if appellants had outstanding orders of removal and if they sought to challenge them, but that is not the case here, primarily because when appellants departed the United States, they executed their removal orders. Therefore, their removal proceedings were terminated under the law and the removal orders ceased to exist. Even if somehow this Court were to find that appellants' removal orders were not executed, the challenge brought in the district court below was not a direct or indirect challenge to any potentially existing order. And although dismissal below was predicated on jurisdiction, the government alternatively sought dismissal of the district court proceedings, arguing that appellants failed to state a claim upon which relief could be granted. But it is clear that the government had a duty to act by adjudicating appellants' applications for adjustment of status, and they failed to carry out that duty. Moreover, their actions were contrary to established law and policy, as evidenced by the fact that during the very course of this litigation, the government issued a policy alert, changing their policy on whether a TPS beneficiary is an arriving alien or not. That was issued in December of 2019, and as I said, it was during the pendency of these cases. Your Honor, the facts of these matters are not in dispute. Appellants were, at some point, all ordered removed. They were later granted temporary protected status, which rendered their removal orders unenforceable as a matter of law. Each of the appellants were then granted permission to depart the United States and return with an advance parole document. Upon return, they sought adjustment of status before U.S. Citizenship and Immigration Services, and their applications were erroneously closed. They sought review of this legal question in the district court, but their complaints were dismissed for lack of subject matter jurisdiction. The district court did have jurisdiction to hear these claims, once again because appellants' removal orders were executed when they departed the United States. 8 U.S.C. 1101G provides that an alien ordered deported or removed who has left the United States shall be considered to have been deported or removed in pursuance of the law. The statute does not draw a distinction between persons who depart with a grant of advance parole and any other alien. It says if they left the United States, and the common usage means that if they left, if they departed, they must have executed their order. The federal regulations further provide that under 1241.7 of the 8 CFR, any alien who has departed the United States while an order of deportation or removal was outstanding shall be considered to have been deported. The words of the statute and the regulation once again contemplate only departure. The government has argued repeatedly that somehow these removal orders were not executed because appellants departed with a permit that would allow them to return, yet they do not have authority for that proposition. They cite to the miscellaneous and technical amendments to the Immigration and Nationality Act, which we will refer to as MATINA, arguing that because a TPS beneficiary is admitted in the same status that they had when they left, that that somehow prevents them from executing their removal order. But MATINA does not speak to the execution of a removal order. And while it is true that a temporary protected status recipient cannot be removed by the government, there is no statute or regulation that states that a TPS recipient cannot execute their own removal order. The mere fact of having advance permission to return to the United States does not undo the departure. And once again, 1101G says departure. If you left, you have deported yourself. In this instance, the government has made a mistake in conflating the status that a TPS recipient returns to with their manner or method of entry, which is specifically what this Court warned against in Gomez v. Lynch. In Gomez v. Lynch, the Court said that admission is an occurrence defined in a wholly factual and procedural terms, whereas status describes the type of permission a person has to legally reside in the United States. So the government's focus on the fact that TPS recipients are admitted and resumed their TPS status is a conflation of those two concepts that are separate and distinct under the law. A TPS recipient can return to their TPS status while also having executed their removal order when they left and simultaneously be an arriving alien, because arriving alien is not a status under the Act. Arriving alien is a designation. It concerns somebody's manner or method of entry. And TPS beneficiaries can be arriving aliens in the same way that a returning lawful permanent resident can be an arriving alien if they meet certain exceptions under the statute. Once again, these removal orders were executed, and the manner and method of coming back to the United States does not somehow invalidate the execution of those orders. So if we affirm the lower court decision, what recourse do the appellants have? Your Honor, if you affirm the lower court decision, the appellants don't have recourse.  They're not able to reopen their deportion orders? Your Honor, our position is that these removal orders have been executed, and that therefore reopening of the proceedings should not be possible. Moreover, because all of the appellants are properly designated as arriving aliens, even in a reopened proceeding, they would not be eligible to apply for adjustment of status, because USCIS has exclusive jurisdiction over an application for adjustment of status filed by an arriving alien. Even if appellants are considered to not have executed their order, which is not something that appellants have conceded or will concede in these proceedings, their claims are still permissible because they are not directly or indirectly challenging their orders of removal. Although 1252A5, B9, and G generally act to strip jurisdiction from the federal courts of claims that directly challenge or sometimes indirectly challenge a removal order, they are inapplicable to the case at bar. Although Section 1252A5 says specifically that a petition for review is the sole and exclusive means for judicial review of an order of removal, we are not seeking review of a removal order. And although 1252B9 is intended to work as a zipper clause and sweep up additional claims that may be less directly related, it does not sweep within its scope claims with only a remote or attenuated connection to the removal of an alien, as this Court said in Duran v. Johnson. It also does not preclude claims that cannot be raised efficaciously within the administrative proceedings that are already available. The claims of the appellants are just that type of claim. They cannot seek adjustment of status in a reopened removal proceeding or in any type of removal proceeding because by virtue of their parole into the United States, they are arriving aliens. They cannot efficaciously raise their claims in the Court. And their claims have only a remote or attenuated connection to anything to do with their removal order. First, because their removal orders are unenforceable by virtue of the TPS statute. Secondly, because USCIS's own policies provide that adjustment of status can be granted irrespective of the existence of an outstanding order of removal. So a determination that USCIS did have jurisdiction over appellant's adjustment applications would not affect their removal order. And third, once again, because USCIS has exclusive jurisdiction over the adjustment applications, these claims cannot be raised in a removal proceeding. Mr. Waterhouse. Yes, Your Honor. Some of our preliminary research indicates a possibility that we should distinguish Duarte's case from the others. Is that, you don't seem to be making any distinction. Your Honor, no, I believe that all of our litigants are similarly situated. In Duarte's case, there is some difficulty in as much as the district court's order is a three-line order. It's very difficult to discern what was the basis of the dismissal below. Presumably, because the government filed motion to dismiss, we know that it was on jurisdiction. But to further distinguish is impossible based on that order. However, based on the motion that was filed by the government, we assume that Duarte is similarly situated to the other litigants. So what would the disposition be? I'm sorry? What would the disposition, what do you say the disposition of this court should be? I believe that this court should find that the district court erred. The district court erred in failing to address the argument that appellants had executed their removal orders. None of the decisions below make any type of finding as to how these removal orders were not executed. They merely proceed to say that these are un-executed orders and that jurisdiction stripping is provided by the statute. But that's a clear error because we put forth that argument in every single one of these proceedings that appellants had executed their orders when they departed. And I believe that is the dispositive issue in this case, Your Honor, because if these orders were executed, then appellants cannot be currently subject to these already executed orders. We should vacate and remand or what? I believe that the case should be vacated and remanded so that the district court can reach the merits of the APA claim. And I think, frankly, if the court sides with us on the issue of the removal orders being executed, that the result that will follow in the district court is that clearly they'll find an APA violation because USCIS has taken a position that's contrary to the law. Okay. The government has argued repeatedly in these proceedings that if appellants are granted adjustment of status, that would somehow invalidate their removal order. Once again, they do not have a statutory citation or regulatory rule for us to know how is it that that position is supported in the law. It simply isn't. We can contrast that with the example of U-Visa recipients wherein the 8 CFR provides that the grant of a U-Visa application will act to automatically revoke by operation of law any prior removal order entered by the Secretary. There is no such provision for adjustment of status. And we have argued against the government throughout these proceedings that the grant or denial of an adjustment application, which again, we're not compelling the decision. We're just asking for this to be adjudicated. But the grant or denial of an adjustment application has no effect on the underlying removal order if such an order is found to exist. And that is because after an adjustment of status is granted to someone with an outstanding order of removal, they would still have to seek redress of the order. Again, there's no automatic cancellation of this order under the law. That simply does not exist. And there's nothing that would prevent the Department of Homeland Security from executing that order. If appellants did not have TPS status or if appellants even after they were granted an adjustment, the department would still have a valid removal order, once again, assuming that the court does not find that they were executed. As a final matter, the government had moved below to dismiss these proceedings on the basis for failure to state a claim upon which relief could be granted. Appellants recognize that this court is free to affirm the district court on any basis supported by the record. And accordingly, we will address the failure to state a claim allegation. Under the APA, we believe that appellants had a claim and that it was appropriate for the district court to review it. It was an abuse of discretion. It was arbitrary. And it was capricious for U.S. Citizenship and Immigration Services to administratively close appellants' applications because appellants are in fact arriving aliens, as defined and described in 8 CFR 1.2. They are arriving aliens because they were paroled in at a U.S. Port of Entry. And there is precedential board case law that tells us from Matarivosa-Wusu that a paroled, an alien who arrives pursuant to advance parole is in fact an arriving alien. Notably, the regulations and case law treat all arriving aliens the same, regardless of whether they were paroled in with a TPS, arriving advance parole document, or any other type of advance parole document. And the MATINA does not change this reality. When returning from foreign travel, anyone who enters the United States with an advance parole document should be considered an arriving alien. And because USCIS has, by regulation and common practice, taken exclusive jurisdiction over applications by arriving aliens, there is no excuse for them to have somehow accepted the appellants and found that they were uniquely not eligible based on, once again, an interpretation of statute and policy that was officially announced in December of 2019, well after this litigation began. The Board of Immigration Appeals has also found in Matarivyari that USCIS has exclusive jurisdiction over an application for adjustment of status filed by an arriving alien, notwithstanding any un-executed order of removal that may exist against that person. We were to disagree with you as to whether they were arriving aliens. Do you have any alternative argument or back-up argument? Your Honor, in this instance, based on the statutes, appellants' position is that it's impossible to decide that they're not arriving aliens. They came here with advance parole documents. Case law says that anyone who enters with advance parole is an arriving alien. Nothing about having temporary protected status makes you not an arriving alien, in the same way that a returning lawful permanent resident can have their resident status because that's their legal permission to be in the United States and also be designated as an arriving alien because they meet the exceptions under 1101. That's just the reality of immigration law. Some things are a status. Other things are your designated manner or method of entry. And herein lies the issue for appellants. Their status is TPS. There is no question. But their status cannot be TPS beneficiary with an un-executed order of removal because with an un-executed order of removal is not a status. Arriving alien is not a status, and yet they are arriving aliens, notwithstanding the fact that they do have TPS. So I believe, Your Honor, in response to your question that no, there isn't another manner for them to obtain relief because they are arriving aliens and there's only one way for them to do this. Thank you. My time is up. I'm reserving five minutes for my colleague. Ms. Larrick. Larrick here. Larrick here, Your Honor. Thank you. Good afternoon. May it please the Court. This Court should affirm the decisions of the District Courts for two primary reasons. First, plaintiff's claims are barred by Section 1252 of the Immigration and Nationality Act. And second, plaintiffs did not become arriving aliens, nor did they execute their removal orders by virtue of their TPS-related travel. I'd like to clarify really what this case is about. This case is not about whether plaintiffs can ultimately become legal permanent residents. Contrary to what plaintiffs have argued, each of these plaintiffs do have a path to legal permanent residency in the United States, whether that is through a motion to reopen with the Immigration Court, which one of these plaintiffs has had their motion to reopen granted, or whether that's with consular processing abroad. So this case isn't about whether plaintiffs will ultimately become legal permanent residents of the United States. It's about what arm of the agency, of DHS, can grant them permanent residency. And second, what is the impact of their final orders of removal here? Their main thrust, I think, what I've heard today, is that they want their claims to be adjudicated. And they haven't been. Is that right? Yes, Your Honor. They would like their claims, their adjustment applications to be adjudicated. And this case is about who has jurisdiction to do that. The government's position, which happens to be the Immigration Court's position as well, not just the position in this briefing, is that the Immigration Court has jurisdiction over that adjustment application. So contrary to plaintiff's statement, plaintiffs do have a path to have that adjustment application adjudicated. That's in the Immigration Court, and that's proven by one of these plaintiffs before this court today, Plaintiff Asala, who has had his motion to reopen granted, and he can now seek adjustment of status in front of the Immigration Court. What about Ms. Duarte? Is her case different from the others? Her case is procedurally different from the District Court below, but they are similarly situated. They have the same facts. So the District Court in Duarte granted summary judgment in favor of defendants. Even though we did, defendants did have arguments regarding Section 1252G before the court, the court decided to grant summary judgment in favor of defendants. So that's the reason why this court can address both the jurisdictional argument the government puts forth and the merits, underlying merits of this case. And as Your Honors may have already seen from plaintiff's argument, the merits of this case and the jurisdictional argument seem to intertwine a little bit, because plaintiffs are right. If they executed their removal order by virtue of leaving the United States, USCIS does have jurisdiction over their applications. But the reason why that's not true, and the reason why plaintiff's argument is wrong, is because a specific portion of the Immigration and Nationality Act, not the general advance parole provisions that plaintiffs cite, applies to plaintiff's case here. So assuming for a second that plaintiffs do have final orders of removal that were not executed, these claims are barred by Section 1252G, or alternatively by Sections 1252B9 and A5. The first section prohibits challenges to DHS's decision to execute removal orders. And this situation is indistinguishable from the situation that was present in this court's case in Cardozo. Because if this court were to compel USCIS to adjudicate the applications, it would also be compelling. There's only two options there. And one of those options is for USCIS to have to grant that application. And if USCIS were to grant that adjustment application, it would be invalidating that final order of removal. It would be stripping DHS of the discretion it has to execute that final order of removal. And that's why Section 1252G applies. Section 1252B9 and A5 were not directly addressed by the district courts below. But those equally apply because petitioners, because plaintiffs, the purpose of their action is to shift jurisdiction from the tribunal who has ordered the plaintiffs removed to USCIS in order to make the removal order ineffective. That means that their challenge is a challenge to their final order of removal. And as the Second Circuit has directly held and seen... They're not seeking a decision from us that would itself invalidate the removal order. No, Your Honor. You're correct. It's one step back. But this court... It's deciding who would decide. Yes, Your Honor. But this court and other courts across the country have continuously held that we must look past such creative labeling and creative pleading. And this is labeling and creative pleading because the practical effect is when you order USCIS to adjudicate this case, USCIS, unless it can find some other reason to deny the application, is going to have to grant that application. And then, once it grants the application for adjustment of status, that individual is a legal permanent resident and DHS is stripped of its discretion to execute that removal order. Plaintiffs are absolutely incorrect that you can be a legal permanent resident and also be subject to your old final order of removal. That contention... Are you saying the agency could not deny the applications if we told them they had jurisdiction? They wouldn't be able to deny the application based on the fact that they had an outstanding final order of removal. Because by telling USCIS they don't have an execute... They've already executed their final order of removal. USCIS would have to throw that reason out the window. But plaintiffs are incorrect that you can be a legal permanent resident and somehow also have an outstanding final order of removal. That contention is precluded by this court's decision in Cardozo where this court already held that granting an adjustment of status application, making someone a legal permanent resident, gets rid of that old outstanding order of removal. Now that person can absolutely be put in removal proceedings again for some other reason, but that old order of removal is gone. So a better case, a more on-point case to look at, although outside of this circuit with regard to the difference in between, whether there is any distinction in between the administrative closure and granting an adjustment application, that can be found in the Singh case, which is at 878F3D441, where the second circuit held that compelling USCIS to adjudicate an adjustment application where they do not believe they have jurisdiction over that adjustment application is a challenge to that final order of removal and barred by Section 1252. So I next want to move on to the applicability and scope of MATINA in this case. And I'm going to talk about the miscellaneous and technical immigration and naturalization amendments of 1991. The parties agree about the scope of jurisdiction with regard to USCIS in the immigration court in this case. The parties agree that in order for USCIS to have jurisdiction over an adjustment application, the alien first may not have an unexecuted final order of removal, or the alien must be an arriving alien. The parties also agree that before plaintiffs left the United States on this TPS-specific travel, they were not either arriving aliens and they had final orders of removal. So before the aliens left the United States, the parties would agree, USCIS absolutely did not have jurisdiction over any adjustment application. Plaintiffs argue that by virtue of this travel, this TPS travel, they have found a loophole in immigration law that suddenly makes them an arriving alien and suddenly executes their order of removal. And ordinarily, in any other situation in immigration law where you have a paroled alien or where you have an alien who leaves the United States, plaintiffs would be right. However, they're not right here because there is a specific statute that applies to the travel of the aliens in this case. All the cases that plaintiffs cite have to do with either an alien who left and executed their removal order without any permission, or an alien who left pursuant to some other type of parole. But that's not what we're talking about here. We're focusing on what the MATINA says in the note to 8 U.S.C. 1254a. The MATINA says that when an alien with TPS leaves the United States, they're allowed back into the United States with the same situation as they were before. The MATINA says that they're admitted in the same immigration status that they were before. Yes, Your Honor, same status. Now, plaintiffs bring up that the word status doesn't mean the word admission and that there are different definitions to those terms. However, we have to look at what the word status means for purposes of the MATINA, not for purposes of other portions of the INA. For purposes of the MATINA, it's clear that the word status means the person's entire legal condition, everything they left with. And the reason why is that the MATINA obviously provides a benefit to TPS individuals. It allows TPS individuals to travel outside the United States where they otherwise would be unable to. So we have to assume that Congress, when they enacted the MATINA, intended to provide a benefit, not a benefit and also in a detriment. Under plaintiffs' argument, they would interpret Congress to have intended to give a benefit, the benefit of travel, but also an extreme detriment to the alien. That detriment being the execution of a removal order, which carries with it bars to becoming a legal permanent resident, which includes an inadmissibility by leaving, an inadmissibility bar for unlawful presence that they may have accrued. How do your opponents get around that? I'm sorry. They acknowledge, but I can't... They say two things. First, they state in their brief that the MATINA doesn't apply at all, that regular parole rules apply, which is not true under a statutory construction. This is a specific statute, so the specific statute controls. In fact, the plaintiffs, when they're given their travel document, it states on there that it's pursuant to this specific provision of the MATINA. And they get around it by second saying that the word status is used in connection to the MATINA, not what the word status means in other areas of immigration law. We're trying to interpret this specific statute. And in this specific statute, Congress intended to provide a benefit to the alien by allowing them to travel. But if under plaintiffs' interpretation, it would mean that Congress was intending to provide both a benefit and a detriment to the alien. It would mean that upon returning from this TPS travel, they will have triggered at least two inadmissibility bars due to their final executed order of removal, which carries a 10-year bar, and an inadmissibility bar for accruing unlawful status, which also carries a 10-year bar to being admissible to the United States. And that simply can't be what Congress intended to do here. Congress intended to provide a benefit to TPS individuals. And we know certainly that Congress did not intend for these individuals to become arriving aliens. We know that because back in 1990, when the MATINA was passed, it was an absolute detriment for individuals to be arriving aliens, because the word for arriving aliens back in 1990 was excludable aliens. And excludable aliens back in 1990 weren't eligible for very important forms of relief in the United States, the most important being suspension of deportation. So no one back in 1990, no alien who came back from the United States wanted to be an arriving alien was an excludable alien, and an excludable alien was not eligible for very important relief. Now, plaintiffs want this court to interpret the MATINA a different way because it benefits them in 2020. But that's not what Congress intended. Congress did not intend plaintiffs to become arriving aliens when they came back, because in 1990 that would have been an absolute detriment to the alien. And it would be an absurd result for this court to interpret the MATINA in the way that plaintiffs want, because then you would have a statute that's essentially, that's making an alien choose between a benefit and a detriment. And that can't be the result that Congress sought to have from the statute that was intended to be a benefit. So just because it's a benefit to TPS beneficiaries today to be arriving aliens, that doesn't mean that that's what Congress intended in defining the word status. The word in Tula Rubio v. Lynch, this court defined the word status as a person's legal condition. The court defined it that way pursuant to Black's Legal Dictionary because the INA doesn't define the word status. A person's legal condition means more than the fact that they have TPS. It means their legal condition with regard to immigration law. Their legal condition with regard to immigration law when plaintiffs left the United States was that they had a final unexecuted order of removal, that they had TPS, and that they were not arriving aliens. We know that's part of their legal condition because we're here today arguing about what effect being an arriving alien has on an adjustment of status application. So we know that not being an arriving alien and having an unexecuted final order of removal must be part of someone's legal condition, which is how status should be defined in this case pursuant to Tula Rubio v. Lynch. So if we define, if we look at the impact of being an arriving alien back in 1990, knowing that that full well would have been a detriment, we have to interpret the statute as consistently providing a benefit because any other result would be absurd. And then if we look at this court's precedent with regard to the term status and with it being undefined in the INA but being defined by this court as a person's legal condition, we have to find that that legal condition includes the fact that they're not an arriving alien and that they have an unexecuted final order of removal. The opposing counsel says that Duarte is not, that her status isn't distinguishable here. They're all, all four appellants are similarly identically kind of situated in terms of our review and I wondered what your take was. Yes. So they're all similarly situated with regard to the facts that matter in this case. The difference is, is the procedural history below and what would happen if this case were decided one way or the other. So if this case, if the court were to grant it, to affirm both decisions of the district court, that takes care of all the decisions in this case. If the court were to say that 1252G doesn't apply and that the court did have jurisdiction, it would have to remand to the district court on the 3 and affirm on the 1 and vice versa for Duarte. So when we put this all together in the MATINA, you find an individual, you find three, four plaintiffs who left the United States on a TPS specific travel document. That TPS specific travel document is governed by the MATINA and the MATINA says you have to, when you leave, you come back in the same exact status. That means the same exact legal condition. That means without any detriment to the alien. So when they come back, they, plaintiffs were not arriving aliens, they had not executed their final order of removal and they still had TPS. And for that reason, section 1252G bars plaintiff's claims and the court should affirm the district court's decision dismissing plaintiff's claims on jurisdictional grounds and then also affirm the decision of the district court granting summary judgment in favor of defendants because summary judgment was appropriate on the merits of this case involving the MATINA. Thank you. Good afternoon, Your Honors, and may it please the Court, the government, Mr. Prabhu, Aaron Prabhu, you have five minutes. Thank you. Thank you, Your Honor. I'm taking up ten of them. Thank you, Your Honor. Your Honors, the government continue to assert in this case that appellants have not executed their orders of removal and they continue to rely on MATINA for that proposition, except MATINA says absolutely nothing about an alien, whether an alien can or cannot execute their order of removal upon departure. MATINA deals specifically with how the person is going to be inspected and admitted back into the United States after foreign travel. It does not apply here in any way. Rather, section 1101G, as my colleague stated before, expressly provides that an alien who leaves the United States deports himself or herself as a matter of law and therefore executes their order of removal. And if the order of removal has been executed, the government cannot execute anything at this point. And the jurisdiction stripping provisions of 1252, A5, B9, and G would not apply here. That TSP order, though, it freezes everything, doesn't it? I'm sorry, Your Honor? The TSP order, or whatever, I may be miscalling it, it freezes everything. Yes, so at this point, yes, they cannot be deported because they have temporary protected status, but that does not prevent them under 1101G from self-deporting. And so while TPS stops the government from deporting them, they are free to deport themselves when they leave. And that's what happened here. And if the jurisdiction stripping provisions don't apply, that firmly resolves the case in favor of the appellants. Even assuming, however, that the orders were not executed, we are not challenging indirectly or directly the orders of removal. The government cites the Cardozo and Duran for the proposition that we are doing that. However, both those cases are entirely distinguishable here. In Cardozo, the litigants brought suit to compel USCIS to grant them adjustment of status and also sought to enjoin the government from removing them. Similarly, in Duran, the litigants brought suit to enjoin ICE from removing their father from the United States. Both of those are direct challenges to the orders of removal, and 1252G prohibits that kind of litigation. That's not the case here. We are just asking USCIS to adjudicate plaintiff's applications, and if they grant them, nothing happens to the underlying order of removal. That is because they would still have to go to the immigration court, file a motion to reopen, and ask the judge to terminate proceedings. And the judge can always decline to do so in his or her favor. Lastly, Your Honors, the government argues that the status is defined broadly, as this court has noted in Tula-Rubio. While that is true, Tula-Rubio is a very limited decision, and Gomez should be the case that applies here. First of all, Tula-Rubio has nothing to do with TPS, and there was no removal order present in that case. Secondly, it speaks generally to the fact that unlawful status is a status in that specific context of cancellation of removal. It's a very limited decision. Gomez is more on point, and it states that there are no subcategories of unlawful status, such as being present without admission. Therefore, the government cannot contend that a TPS holder with a final order of removal is a status within the meaning of the INA. Essentially, they cannot append TPS status, which is the person's status, with final order of removal and make that a status, because that would be entirely too broad, and that's not a result that Congress intended. I also want to briefly address the issue of Izola's case being granted. Now, while it is true that the motion to reopen was granted for Izola in this case, that does not mean that the immigration court has jurisdiction. The government has pointed to no authority to say that the immigration court's position is that they have jurisdiction to consider these claims. These appellants are clearly arriving aliens, and the only body to adjudicate their applications is the United States Citizenship and Immigration Services. But even assuming that even though Izola's case was reopened, the immigration judge has made no sort of claim afterwards that he retains jurisdiction. And if he says no, he does not retain jurisdiction, then we would have to seek alternative forms of relief for Izola. So it matters not whether that case was reopened. He cannot seek adjustment of status in the immigration court. So if I can briefly conclude, Your Honors, appellants' position is that they have executed the orders of removal when they traveled on their advance parole, and therefore the jurisdiction stripping provisions of 1252 do not apply. Even if they were to apply, appellants are not directly or indirectly challenging the orders of removal, because even a grant of adjustment of status does not in any way alter the removal orders. And lastly... Bring your argument to a close. Sorry? Bring your argument to a close. Yes, Your Honor. And lastly, the USCIS is the only body to adjudicate these applications because plaintiffs are arriving aliens within the meaning of the law. Thank you, Your Honor.